# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TARGET CONSTRUCTION, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 12-1820** |
| | * | |
| **BAKER PILE DRIVING & SITE WORK, L.L.C.** | * | **SECTION "L"(4)** |

## ORDER & REASONS

The Court has pending before it Plaintiff Target Construction, Inc.'s motion to dismiss counterclaims for failure to plead all of the elements of the claims. (Rec. Doc. 9). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I.   BACKGROUND

This case arises out of a contract for the sale of a crane. On August 30, 2011, Plaintiff, Target Construction, Inc. ("Target"), and Defendant, Baker Pile Driving & Site Work, L.L.C. ("Baker"), entered into a purchase agreement under which Baker would purchase a 120-ton American 999 Series crane ("the Crane") from Target. As payment for the Crane, Baker agreed to clear $148,438.00 of past debt that Target owed to Baker and to make a payment to Target in the amount of $40,000.00. Baker took delivery of the Crane in September 2011. Baker alleges that shortly after delivery of the Crane, Target, through superintendent Eddie Riggs, made an offer to Baker to reduce the $40,000.00 payment to $25,000.00 if Baker would pay the balance immediately. Baker claims to have accepted the offer and at Riggs's instruction, wired $25,000.00 into an account in the name of Charles Walden at a Las Vegas, Nevada bank. Target denies receipt of Baker's $25,000.00 payment and claims that it does not have any connection with Charles Walden. Target maintains that it has never received payment for the Crane.

During negotiations, Target allegedly told Baker that the Crane was OSHA certified. At some point after taking delivery of the Crane, Baker alleges to have discovered hidden defects in the Crane, and was informed that in its current condition, OSHA would not certify the Crane. Thus, Baker claims that it had to make substantial improvements to the Crane, at great cost to Baker, totaling $102,539.65. In addition, Baker claims to have incurred $12,780.00 in rental fees for renting a replacement crane while the Crane was being repaired.

Under the purchase agreement, Target was to deliver the Crane to Baker free and clear of any encumbrances, and Baker was not obligated to pay Target until the free and clear title was delivered. Baker claims to have repeatedly requested the release of the security interest affecting the title to the Crane. In response to one of Baker's requests, Target allegedly sent Baker a copy of a signed UCC-3 release form, representing that the form effected the release of the security interest in the Crane. After close inspection of the document, Baker claims to have found that the UCC-3 form did not release the Crane purchased by Baker, but bore the serial number of another crane. Baker claims that it has still not received the free and clear title to the Crane.

Target brings this diversity action against Baker for breach of contract and for non-payment for the use of the Crane. Target's basis for the breach of sale claim is that Target never received the $40,000.00 payment from Baker, and it also denies receiving a $25,000.00 payment in lieu of the original purchase price. The basis for Target's non-payment claim is that, should the sale be rescinded for breach, Baker should be made to pay $39,000.00 for the use of the Crane due to expenses that Target has incurred during the time that Baker has been in possession of the Crane.

Baker responds to Target's complaint by asserting a number of counterclaims, those at

issue in this motion being misrepresentation of the condition of the Crane, misrepresentation concerning the title to the Crane, violation of the Louisiana Unfair Trade Practices Act, and unjust enrichment. Baker bases its claim for misrepresentation of the condition of the Crane on the fact that the Crane had not been OSHA certified, yet Target represented to Baker that the Crane was certified. Baker's basis for the misrepresentation concerning the title of the Crane is that Target attempted to mislead Baker into believing that the security interest on the Crane had been released by sending Baker a UCC-3 form which it represented to release the Crane, but in actuality released a different crane. Baker bases its claim for violation of the Louisiana Unfair Trade Practices Act on the allegation that Target has performed unfair or deceptive acts in the course of trade or commerce that have damaged and are damaging to Baker. Finally, Baker bases its claim for unjust enrichment on the theory that if the sale is rescinded, Baker will have spent money improving the Crane, and Target will receive the benefits of these improvements.

## II.     PRESENT MOTION

Plaintiff Target now moves to dismiss four counts of Defendant Baker's counterclaim. (Rec. Doc. 9). Target argues that the element of intent is missing from the claims for misrepresentation and the claim for violation of the Louisiana Unfair Trade Practices Act. Target also argues that the claim for unjust enrichment is missing a key element due to the existence of alternative legal remedies. Baker opposes the motion and argues that the pleadings are sufficient as written.

## III.    LAW AND ANALYSIS

### A.     Standard on Motions to Dismiss

When a court considers a motion to dismiss for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

**B.     Misrepresentation of the Condition of the Crane**

Federal Rule of Civil Procedure 9(b) requires that when a party alleges fraud, that party must allege "with particularity the circumstances constituting fraud." Rule 9(b) states that intent, knowledge and other conditions of a person's mind only need to be alleged generally. The entirety of Baker's counterclaim for misrepresentation of the condition of the Crane is as follows:

> During negotiations of the terms and conditions of sale, Target misrepresented to Baker that the Crane was properly certified for use on construction projects, and that the Crane was in good working condition. However, after Baker took delivery of the Crane, it discovered that the Crane was not certified and would that OSHA would not certify the Crane in its then-current condition.

(Rec. Doc. 6 at p.13, ¶ 30).

In its Rule 12(b)(6) motion, Target argues that Baker has failed to plead fraud with particularity. Specifically, Target argues that Baker in its counterclaim does not allege, even generally, either intent or knowledge of the misrepresentation needed to make

4

out a claim for fraud under Federal Rule of Civil Procedure 9(b). Target claims that the above paragraph does not allege, either generally or specifically, that Target had intent to deceive or defraud Baker. In its opposition to the motion to dismiss, Baker argues that the Court "could easily infer" that Target intended to deceive Baker. (Rec. Doc. 11 at 2).

The Court can make no such inference. Nothing in the facts alleged gives rise to a stronger inference of intentional misrepresentation than to an inference of negligent misrepresentation, or an inference of mistake. Because Rule 9(b) requires that fraud be pled with particularity to the circumstances allegedly constituting the fraud, Baker cannot rely on an inference from the Court to supplement pleadings that are insufficient. Therefore, Baker's claim for misrepresentation of the condition of the Crane must be dismissed for failure to plead fraud with the requisite particularity.

**C.     Misrepresentation Concerning the Title of the Crane**

Baker's counterclaim alleges the following:

> 36.
> In response to one of Baker's requests regarding the status of Bank of America's security interest in the Crane, Target tendered to Baker with [*sic*] a copy of a signed UCC-3 release form and misrepresented that the form effected the release of Bank of America's security interest in the Crane.
>
> 37.
> After reviewing the UCC-3 release form, Baker determined that the form did not pertain in any way at all to the Crane, but concerned and effected the release of the bank's security interests in another crane having a different serial number.

(Rec. Doc. 6).

Target argues that Baker's counterclaim of misrepresentation concerning the title of the Crane is insufficient on two theories. First, Target argues that the claim of misrepresentation is

inapplicable to the facts at hand, on the grounds that the failure to fulfill a condition is not fraud, but rather is a breach of promise. Second, Target argues that justifiable reliance is a key element of fraud and further argues that Baker does not properly plead any justifiable reliance on the alleged misstatements of Target.

Baker responds in opposition to the Rule 12(b)(6) motion that it did, in fact, rely on Target's continued representations when it undertook the repairs and improvements to the Crane. Baker further argues that Target's actions show that Target never intended to obtain a release on the title of the Crane, but rather, Target's actions were meant to fraudulently induce Baker into the contract of sale so that Baker would release Target's debts to Baker.

The Court is required in a Rule 12(b)(6) motion to assume that all of the facts are true and to make all inferences in favor of the non-moving party. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). In reading the facts in a light most favorable to Baker, the Court concludes that there is a period of time during which Baker could have justifiably relied on the UCC-3 document sent to Baker by Target, purporting to release the Crane, but in reality affecting the title to another crane. With regard to Target's assertion that the statements were simply unfulfilled conditions, the Court again must adopt the facts in the light most favorable to the non-moving party, and cannot accept Target's version of these facts by finding that the statements were simply unfulfilled conditions. While Baker's argument may not stand up to the summary judgment phase, the pleadings are sufficient to defeat dismissal under Rule 12(b)(6). Therefore, Target's motion to dismiss Baker's counterclaim as to misrepresentation regarding the title to the Crane is denied.

**D. Louisiana Unfair Trade Practices Act**

LUTPA provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405. To establish a LUTPA claim, a plaintiff must show that the alleged conduct "offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious." *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, 35 So.3d 1053, 1059 (La. 2010). Courts are allowed to decide whether an act is an "unfair trade practice" on a case-by-case basis, and cases that have been decided under LUTPA have defined "unfair trade practices" narrowly. *E.g.*, *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). Only "[f]raud, misrepresentation, deception, and similar conduct" are prohibited by LUTPA. *Id.* Courts have distinguished these acts from acts of mere negligence. The Fifth Circuit has explained that "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Id*. Courts have similarly found that LUTPA does not provide an alternate remedy for actions that are simply breaches of contract. *Id*.

Target argues that Baker's counterclaim for a violation of the Louisiana Unfair Trade Practices Act ("LUTPA") is insufficient because Baker fails to allege conduct that rises to the level of egregiousness prohibited by LUTPA. Baker argues that its claims of misrepresentation are examples of precisely the type of egregious behavior that LUTPA prohibits.

Here, Baker's LUTPA claims fail for much the same reason its first fraud claim fails: it has not adequately pled Target's intent to deceive as distinguished from mere mistake or negligence. LUTPA is concerned with the intentional deception underlying a defendant's acts, and Baker has failed to allege such intentional deception on behalf of Target. As the Fifth Circuit

stressed in *Turner*, LUTPA is not a substitute for a simple breach of contract action; here, Baker's allegations are more similar to a breach of contract claim than to a claim for the egregious behavior covered under LUTPA. Therefore, Baker's pleadings do not state a claim for violation of LUTPA. Accordingly, Baker's claim under LUTPA must be dismissed.

**E.     Unjust Enrichment**

In order to establish a claim for unjust enrichment under Louisiana law a plaintiff must prove five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) no justification for the enrichment; and (5) no other remedy at law. *SMP Sales Mgmt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992). A claim of unjust enrichment in Louisiana may proceed only when no alternative remedy at law exists. La. Civ. Code Ann. art. 2298. Courts applying the Louisiana statute for unjust enrichment have held that it is not the success of the alternative claim, but the existence of the alternative claim that determines whether a claim for unjust enrichment is available. *Mayer v. Lamarque Ford, Inc.*, 00-1325, 2001 WL 175232, *1 (E.D. La. 2001).

Target requests dismissal of Baker's unjust enrichment claim on the grounds that unjust enrichment is available only where there are no alternative legal remedies available to the claimant. Target argues that because of the available and pled claim for breach of contract, Baker cannot state a claim for unjust enrichment. Baker argues that the Court is "well aware" that the claim for unjust enrichment is an alternative basis for recovery, even though Baker did not plead this cause of action in the alternative. Baker further insists that if the Court rescinded the contract of sale, there would be no other legal bases on which Baker could recover.

In this case, Baker seeks, and the law provides, a plausible breach of contract remedy.

8

Unjust enrichment is not an appropriate cause of action because no gap in the law exists that prevents Baker from pursuing a remedy at law for its alleged injury. *Mongrue v. Monsanto Co.*, 98-2531, 1999 WL 970354, *5 (E.D. La. 1999), *aff'd,* 249 F.3d 422 (5th Cir. 2001). Because Baker has an alternative remedy at law, and because the claim for unjust enrichment was not brought in the alternative, Baker's claim for unjust enrichment must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff Target's motion to dismiss (Rec. Doc. 9) is GRANTED with respect to Defendant Baker's counterclaims for misrepresentation of the condition of the Crane, violations of the Louisiana Unfair Trade Practices Act, and unjust enrichment, and DENIED with respect to Defendant's counterclaim for misrepresentation concerning the title of the Crane. IT IS FURTHER ORDERED that Baker shall have leave file amended counterclaims within 30 days of this Order.

New Orleans, Louisiana, this 20th day of November, 2012.

_____
UNITED STATES DISTRICT JUDGE